**Tommy L. WILLIS, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

Dec. 21, 1978.

Certiorari Denied by Supreme Court March 5, 1979.

Bobby Ray Tate, Kingsport, for appellant.

William M. Leech, Jr., Atty. Gen., Michael J. Passino, Asst. Atty. Gen., Nashville, R. Jerry Beck, Asst. Dist. Atty. Gen., Blountville, for appellee.

DAUGHTREY, Judge.

## OPINION

The petitioner, Tommy L. Willis, pleaded guilty to grand larceny in May 1976 and was sentenced to six to ten years imprisonment. His plea was made in exchange for the prosecutor's agreement to drop an additional count charging Willis with being an habitual criminal.

Some two years later, Willis filed a petition for post-conviction relief, alleging that he was not mentally competent when he entered his guilty plea in 1976 and that this fact should have been apparent to the trial judge, who thus violated the petitioner's constitutional rights in failing to hold a hearing to determine Willis's competency before receiving his plea. He cites as authority *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), which holds that an incompetent defendant cannot be constitutionally tried and convicted, and that in cases in which the evidence raises a bona fide doubt as to a defendant's competence to stand trial, the judge, on his or her own motion, must order a competency hearing.

After appointment of counsel and an extensive hearing on the petition, the Court below denied relief.

■ Willis insists on appeal that the transcript of the guilty plea hearing demonstrated conclusively that the trial judge entertained substantial doubt about the petitioner's competence to plead guilty. That transcript includes the following exchange between the petitioner and the trial judge:

The Court: Anything about your health, physical or mental condition that would cause you not to fully and completely understand the proceedings here today?

A. (Unintelligible response.)

The Court: Sir?

A. (Unintelligible response.)

The Court: Anything about your physical condition that would cause you not to fully and completely understand the proceedings here today?

A. I don't think so.

The Court: Anything about your mental condition that would cause you not to fully and completely understand the proceedings here today?

A. Truthfully, yes.

The Court: What about your mental condition that would cause you not to fully and completely understand the proceedings?

A. I don't know how to explain it.

The Court: Do you feel that you do not—you cannot listen to the Court and completely understand everything that the Court is telling you and voluntarily plead guilty here today?

A. I don't—I don't mean it like that.

The Court: Have you had any treatment for any psychiatric, emotional or mental disorder?

A. No, sir.

The Court: Have you sought any?

A. I probably—Yes, sir, I probably have in a way.

The Court: Do you believe that you have some mental, psychological or emotional disorder?

A. I probably do but not to the extent that I don't understand.

The Court: What do you believe is the nature of your problem?

A. I want to plead guilty.

The Court: I understand that, but . . . .

A. Can I sit down?

The Court: Yes, sir. What do you believe is the nature of your problem? Is it a nervous problem?

A. Yes, sir.

The Court: Is there anything that would cause you not to think clearly here today?

A. Your Honor, I want to plead guilty.

The Court: I understand that, Mr. Willis, but before the Court can allow a guilty plea, the Court must determine wheth-

er or not you are physically and mentally and emotionally capable of entering a guilty plea and whether you are, in fact, guilty.

A. Well, I have to admit that I'm going through a stage that—that's—that at times I don't understand myself, but

. . . .

The Court: You're saying there are times you don't understand why you do what you do? Is that the problem?

A. I've been trying to justify a lot of things that I've done in my past.

The Court: I can understand that.

A. But I understand what's going on here.

The Court: You don't think you have any problem—if you think that you, in fact, do, even though you haven't been treated for any problem, if you think that you do have some intermittent problems as you've stated—I think I'm correctly paraphrasing what you've said. If I misstate anything or—you understand what I'm saying now? If I misstate it, you tell me very quickly. But do you believe that you—you've had a soul-searching problem recently, but it's not such as would affect your ability to clearly understand what I'm telling you. Is that what you're telling me?

A. Yes, sir.

The Court: And you believe that you can fully and completely understand what we're doing?

A. Yes, sir.

The Court: And what you're doing?

A. Yes, sir.

The Court: And the nature of what you're doing?

A. Yes, sir.

The Court: And the consequences of it?

A. Yes, sir.

This colloquy from the transcript represents only a small portion of the trial judge's painstaking effort to ensure that Willis's plea was knowingly, voluntarily, and understandingly entered. There is nothing in this or any other part of the

transcript which could be taken to constitute the "substantial evidence" of mental incompetency which is a prerequisite to a finding that the trial court has violated the principles of *Pate v. Robinson, supra.* Even so, the post-conviction hearing conducted by Judge Murphy was far-ranging and exhaustive. The petitioner was permitted to explore every possible ramification of the allegations in his petition.

Willis's witnesses described him at the time of his pre-trial incarceration as indecisive about whether to plead guilty, emotionally upset and very nervous, and physically sick as a result of being unable to eat the jail food. His two attorneys recalled that he was extremely nervous and under a great deal of pressure because of the pending habitual criminal charge, which Willis thought was ". . . unfair, . . . a personal thing by [the District Attorney]." This situation was corroborated by three of the local jailers and an "arts and crafts lady" from a local church, who did weekly counselling with jail inmates. Despite Willis's understandable concern about the serious charges against him, his attorneys were certain that their client had "understood what was happening and understood the consequences"; neither one of them saw any reason to request a pre-trial psychiatric examination.

■ The record amply supports the finding of the hearing judge that the petitioner was mentally competent at the time he pleaded guilty. We hold that there was no error under *Pate v. Robinson, supra,* nor do we find any abuse of discretion in the court's decision not to order a psychiatric evaluation of Willis prior to ruling on his post-conviction petition.

The judgment below is affirmed.

DUNCAN and CORNELIUS, JJ., concur.